# Caspar Welty and wife, *vs.* Joseph Welty, Exc'r of Susanna Hornaker.

The two first witnesses to a will *forty years old*, containing the usual attestation clause and purporting to be signed by the testator, were dead, but their signatures were proved, and also that they were *men of integrity and business habits.* The third and surviving witness proved his signature; that he was requested by the testator "*to come over and put his name to his will;*" that he accordingly signed a paper in presence of the testator and one of the other witnesses, and never signed any other paper for him or at his request; but did not sign in the presence of the other witnesses, nor did the testator sign the will in his presence, nor does he recollect that the three witnesses were at any one time all present when the testator acknowledged the paper to be his will. Held:

That this will was properly admitted to probate, though there was no proof of the signature of the testator thereto.

The law looks with lenity upon the failure of the memory of witnesses to *ancient wills.*

It is not necessary that the witnesses to a will should sign it in the presence of each other, nor need they see the testator actually sign, nor need he acknowledge his signature to all the witnesses at the same time; the acknowledgment may be made to each witness separately.

Appeal from the Orphans Court of Frederick county.

This was a *caveat* to the will of Peter Hornaker, executed on the 13th of April 1813 and offered for probate on the 23rd of April 1855, filed by the appellants, as heirs at law, upon the following grounds:

1st. Because the paper was not signed by the testator or by any other person in his presence, or by his express directions.

2nd. Because it was not attested and subscribed in the presence of the testator by three or four credible witnesses, or by the persons whose names are subscribed as witnesses thereto.

3rd. Because said persons whose names are subscribed as witnesses did not attest said will in the presence of each other.

The sanity of the testator at the time of the execution of this will was admitted, and the appellee, the executor of the devisee under the will, having answered the *caveat*, testimony was taken, which is fully stated in the opinion of this court, and the orphans court ordered the will to be admitted to probate. From this order the caveators appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Wm. P. Maulsby* for the appellants, argued, that there was no sufficient proof that the requirements of the act of 1798, ch. 101, sub-ch. 1, sec. 4, have been complied with. These requirements must be proved either by positive evidence of the subscribing witnesses themselves, if living and within reach of the process of the court, or if they be dead, by such facts and circumstances as will enable the court or jury to find the facts. In the latter case, among the facts to be proved must be the handwriting of the testator and that of the subscribing witnesses. In the former case, one of the subscribing witnesses is sufficient to be produced, provided he can prove that all the requirements of the statute had been complied with. 2 *Selw. N. P.*, 89. 19 *Johns.*, 386, *Jackson vs. Le Grange.* 1 *Wend.*, 406, *Jackson vs. Vickory.* 11 *Wend.*, 599, *Fetherly vs. Waggoner.* The learned counsel then insisted upon the following points:

1st. There is no proof that this will was signed by the testator, or any person by his direction, at the time the witness produced signed it. The witness to a will must see the testator actually sign, or his signature must appear to the will at the time of attestation and be acknowledged by him. 1 *Jar-*

Welty & Wife, *vs.* Welty, Exc'r of Hornaker.

*man on Wills,* 115, 116, 117, and cases there referred to. It must appear from the proof that the paper was *signed* by the devisor, and so signed, was *attested* by the witnesses.   7 *Eng. Eccl. Rep.*, 340, *In re. Harrison.*  In this case the witness proves, that the paper was *not* signed by the testator in his presence, and fails to prove that it was produced to him by the testator *as his will,* and that his name was signed to it when witness subscribed it, and by consequence, any acknowledgment by the testator of his signature.   This is a much stronger case than those cited above from New York, where the witness had forgotten the circumstances, and room was left for all necessary inferences from the fact, that the signature of the witness was proved, and the circumstance that the witness was familiar with the requisites of the law to the valid execution of wills, and would not probably have subscribed the paper unless those requisites had been gratified.   See also on this point 5 *Philips on Ev., (New Ed.,)* 447.   2 *Littell,* 137, *Ghrinn vs. Radford.*  3 *Leigh,* 443, *Dudleys vs. Dudleys.* 1 *Dana,* 162, *Carrico vs. Neal.*  1 *Molloy,* 31, *Holton vs. Lloyd,* and cases cited in notes 12, 13, 14 to appendix in *3rd Ed. of Philip on Ev.*  It must appear by production of witnesses that the testator *signed the will,* and proof of handwriting will not do.   7 *Eng. Eccl. Rep.,* 509, *Blake vs. Knight. Ibid.,* 517, *Keigwin vs. Keigwin.*

2nd.   There is no proof this paper was attested and subscribed by three or four credible witnesses.   The case of witnesses attesting at different times is supported by so many authorities, that it may be considered as settled; yet, says Sir John Strange, in the case of *Ellis vs. Smith,* 1 *Ves., Jr.,* 14, "I think it is a dangerous determination, and destructive of those barriers which the statute has erected against fraudulent perjuries."   Whilst a will may be attested by the witnesses separately, yet there must be *affirmative proof* that they did so attest, (5 *Philip on Ev.,* 449,) and that the paper was attested and subscribed in the presence of the devisor, or there is yet a further destruction of those barriers.   The attestation clause is not evidence.   It is only evidence to go to the jury in connection with other facts and circumstances, from which the jury

3      v.8

may find the fact of the attestation and subscription in the presence of the devisor. 1 *Selw. N. P.*, 89. 19 *Johns.*, 386, and other cases cited under the first point; and also the Maryland cases: 1 *H. & J.*, 1, *Collins vs. Elliott. Ibid.*, 399, *Collins vs. Nicols.* 4 *H. & J.*, 241, *Miller vs. Honey.*

3rd. Proof of the handwriting of a deceased witness is only admitted on the ground, that it is the best evidence which can be produced. If a witness be living he must be called; and to establish the will, he must prove that all the requisites of the statute have been complied with, or he must prove facts and circumstances from which the jury may so find. Where the witnesses are all dead, it is left to the jury to decide from circumstances merely, without any positive proof, whether the witnesses set their names in the presence of the testator. 2 *Comyn's Rep.*, 531, *Hands vs. James.* In this case no single circumstance is proved to assist an inference from the naked fact of the handwriting of the deceased witnesses. They may have subscribed separately. In this case they must have done so, if at all. It is proved they did *not* subscribe in the presence of each other, as is alleged in the attestation clause. There is no proof that they did subscribe separately. None that they subscribed in the presence of the testator. Welty and Motter may have done so, but positively Hughes did not. If it may be inferred that Welty and Motter did subscribe in the presence of the testator, the same proof is positive that the testator did *not sign* in their presence and did *not acknowledge* the signature as his. The proof also fails to show that there was any signature at all of the testator to the paper when it was subscribed by the witness, or that it was at any time within his knowledge placed to it. The *onus* is on the party offering the will for probate. He cannot claim the benefit of an inference, from the single fact of the handwriting of the dead witnesses that the requirements of the statute have been gratified, in opposition to the positive proof of the living witness that they have not. Nor can he be entitled to a presumption that every thing made necessary by the statute has been done, when, having produced the living witness, he omits or fails to prove that every necessary thing was done, especially when

the deficiency of proof is not even alleged to have proceeded from the failure of the witness' recollection. Again, there is no sufficient proof of the handwriting of the testator to this paper. The witness, Hardman, says, he has seen the testator write, and "to the best of *my impression* it is his handwriting." He does not swear to his *belief* that it is his handwriting, and nothing short of this will suffice. The law recognises no such term as *impression.* 1 *Greenlf. on Ev.*, sec. 576.

*Grayson Eichelberger* for the appellee, stated, that the act of 1798, ch. 101, sub-ch. 1, sec. 4, is a transcript of the statute 29 Charles 2, ch. 3, sec. 5; and the English rule of construction of the statute of frauds in the execution of wills, applies in those States which have followed the language of the statute. 4 *Kent's Com.*, 516. And then argued:

1st. That the witnesses to a will need not attest it in the presence of each other. 4 *Kent's Com.*, 516. *Roberts on Frauds*, 432. 1 *Greenlf. on Ev., sec.* 272. 1 *Jarman on Wills*, 72, note 2. 2 *Starkie on Ev.*, (6th Ed.,) 918. 2 *Selw. N. P.*, 83.

2nd. The testator need not sign the will in the presence of the attesting witnesses. An acknowledgment by him of his signature or that it is his will, is equivalent to signing and is sufficient. *Roberts on Frauds*, 309, 392. 1 *Greenlf. on Ev., sec.* 272. 2 *Greenlf. on Ev., secs.* 675, 676, 677. 1 *Jarman on Wills*, 71, 72, 73, *and note* 1, and cases there cited. 2 *Starkie's Ev.*, 1262, note 1. *Lovelass on Wills*, 299. *Modern Probate of Wills*, 166, 167, 170, 177, 179. 3 *Leigh*, 436, *Dudleys vs. Dudleys.* 1 *Philip on Ev., (old Ed.,)* 481. 1 *Ves., Jr.*, 11, *Ellis vs. Smith.* 17 *Pick*, 373, 379, *Hall vs. Hall.* 1 *Metcalf*, 349, 352, *Dewey vs. Dewey.*

3rd. Where the witness is dead, on proof of signature attestation in presence of the testator will be presumed, as also the other requisites of the statute. 1 *Jarman on Wills*, 74, *(marg.,)* 218, 219, 220, *(top.)* *Roberts on Frauds*, 413, 414. 1 *Philip on Ev.*, 483, 484. 2 *Selw. N. P.*, 85, 89. *Lovelass on Wills*, 417, 418. *Comyn's Rep.*, 530, *Hands vs. James.* 2 *Strange*, 1109, *Croft vs. Pawlet.* 1 *Wend.*,

406, *Jackson vs. Vickory.* 6 *Bing.*, 310, *White vs. British Museum.* 7 *Bing.*, 457, *Wright vs. Wright.* 2 *Greenlf. on Ev.*, sec. 677. *Best on Presumptions,* 66. *Modern Probate of Wills,* 196, 197, 491. 2 *Littell,* 137, *Gwinn vs. Radford.* 26 *Wend.*, 325, 338, *Remson vs. Brinkerhoff.* 2 *Barb. Ch. Rep.*, 40, 56, 57, 58, 59, 60. 1 *Crompton & Meeson,* 140, *Johnson vs. Johnson.* 2 *Starkie's Ev.*, 920; 923. 3 *Lomax Digest,* 51. 19 *Johns.*, 388, *Jackson vs. Le Grange.* The cases cited from 7*th Eng. Eccl. Rep.*, by the counsel upon the other side, rest upon the distinction between the statute of *Charles* and *Victoria,* the latter requiring the *acknowledgment of the signature,* and consequently do not apply to this case. Again, this is a will more than *forty years old,* and where such great length of time has elapsed since the execution and the memory of the attesting witnesses fail, less strict proof is required. *Modern Probate of Wills,* 456, *et seq.* 1 *Greenlf. on Ev.*, sec. 21.

ECCLESTON, J., delivered the opinion of this court.

In the year 1855, a paper purporting to be the last will and testament of Peter Hornaker, bearing date the 13th of April 1813, was exhibited for probate in the orphans court of Frederick county, to which the appellants filed a caveat. The attestation clause is in the usual form, and appears to have been signed by three witnesses, in the following order:

"*Lewis Motter.—Joseph Hughes.—Abraham Welty.*"

The first two being dead their signatures were proved to be genuine. And in reply to a question propounded in relation to their standing as men of business and of integrity, a witness answered, "I was personally acquainted with the said Motter and Hughes. Motter was a very competent business man, none more so in the country. Hughes was rather out of business when I knew him; his general reputation was that of an active business man, and both men of integrity."

Abraham Welty was called and examined. He proved his own signature. Being asked whether he signed the paper at the request of Peter Hornaker, what Hornaker then said, whether at the time he (the witness) signed the will Hornaker

Welty & Wife, *vs.* Welty, Exc'r of Hornaker.

was present, and who else was then present, he says, "I was in the street and Peter Hornaker requested me to come over and put my name to his will; he was present. Mr. Motter must have been in when I was." To the best of his knowledge this witness never witnessed any other paper for Hornaker or at his request.

On cross-examination Welty says he might have seen Hornaker sign his name to the paper, but to the best of his recollection he did not. He has no recollection that Hornaker did sign it in his presence, or where he might have seen him.

To the best of Welty's knowledge when he signed his name Hornaker and Motter were both present, but he says he does not know whether Motter signed his name to the paper or not. Hughes was not present. In another part of his cross-examination this witness testifies that Motter was present but he did not see him sign his name; that Hughes was not there and did not sign in his presence. He has no recollection that himself, Motter and Hughes were at any one time all present with Hornaker when he acknowledged the paper to be his last will and testament.

In response to an interrogatory on the part of the appellee, Welty answered, "I do not mean to say that Lewis Motter did not sign his name to said paper in my presence—I only mean to say that I have no recollection of seeing him sign his name to said paper. From the lapse of time I have no recollection on the subject."

For the purpose of proving the signature of Peter Hornaker, Philip Hardman was examined as a witness, who said, "I have seen him write, to the best of my impression it is his handwriting." This testimony has been objected to as inadmissible to prove the signature. Whether the objection is valid or not, it is unnecessary to decide, because we think without it the other circumstances disclosed in the record are sufficient to sustain the decision of the orphans court, admitting the will to probate. The case will therefore be treated as if Hardman's testimony was not in it.

The paper in dispute being over forty years old at the time of the trial, is a very important fact, having considerable influ-

ence upon our decision, and the views expressed in this opinion are to be considered as having particular reference to such a paper. Whether a will of recent date, if supported by such testimony as the present, would be admitted to probate, is not now a question to be decided.

The law is based upon reason and does not exact impossibilities. Rules of evidence which apply to some transactions of recent occurrence, are very much relaxed when transactions of a like character, but of very ancient date, come under consideration. The frailty of the memory of man renders this essentially necessary, for without such relaxation gross injustice would frequently be the inevitable result. That the law looks with lenity upon the failure of the memory of witnesses to ancient wills, may be seen by reference to *Lovelass on Wills*, 418, and the authorities there cited in the notes, (25 *Law Lib.*, 224,) 19 *John. Rep.*, 389. 1 *Wend. Rep.*, 414.

The witnesses, it appears, did not sign this will in the presence of each other; nor was it necessary that they should, according to the English decisions, under the statute of 29 Charles 2nd, ch. 3, sec. 5, of which our act of 1798, ch. 101, sub-ch. 1, sec. 4, is a copy.

The cases cited by the appellants' counsel from 7 *Eng. Eccle. Rep.*, are decisions upon the statute of 1 *Vic.*, ch. 26, which differs materially from that of Charles 2nd. But speaking of decisions under the last named statute, on pages 416 and 417 of 7 *Eccl. Rep.*, Sir Herbert Jenner Fust says: "It was held not necessary that the witnesses should see the testator actually sign; he need not acknowledge his signature to all the witnesses at the same time, the acknowledgment might be made to each witness separately; a simultaneous presence of the witnesses was not required." He then refers to several cases as having determined that an acknowledgment in the presence of each witness separately is sufficient. Other cases are cited by him as showing that a request to witnesses to subscribe their names as witnesses, without stating what the instrument was, was a sufficient acknowledgment under the statute of Charles. And again he says, on page 417: "Under the statute of frauds it was sufficient if the paper was acknowledged

to be a will, but it is now enacted in express terms that the signature shall be acknowledged, it would seem to require that the witnesses should see the signature; that they should know that the paper was signed at the time, a fact which could only be known by seeing the testator sign, or by hearing him say that he had signed, and that was his signature." The subject of a testator's acknowledgment of the will, in the presence of the witnesses, is further treated of in the same case, on pages 419, 420.

In *Hund vs. James, Comyn's Rep.*, 531, the three witnesses to the will being all dead, the court held, that they having set their names to the paper it must be intended they did it regularly. And as one of them was an attorney of good character he might be presumed to understand what ought to be done, rather than the contrary.

Considering a portion of the opinion of Judge Cabell, in *Dudleys vs. Dudleys*, 3 *Leigh's Rep.*, 442, 443, so properly applicable to the case of this old will, we are induced to make a long quotation from it. He says: "Now the writing in controversy purports to be the will of Gwin Dudley, and his name is signed to it as testator; and Hendrick deposes, that this very paper was acknowledged by Dudley, and that he subscribed his name, as a witness, in his presence. It is true he does not expressly say that Dudley's name was or was not signed to the will at the time it was acknowledged. But it is not usual for men to acknowledge papers, either as deeds or wills, and to call on others to attest them before they are signed. Such a thing may happen, and when it is proved to have happened, the acknowledgment and attestation will be disregarded. But, in the absence of all proof to the contrary, the acknowledgment and attestation give rise to an irresistible inference, that the instrument had been previously signed. A contrary course would defeat a vast number of deeds and wills; for it may often happen, and frequently does happen, that a witness not only does not remember to have seen the signature, but he does not remember the acknowledgment or the attestation, but when he sees his name subscribed by himself, as a witness, and knows that he would not have witnessed a blank

or unacknowledged paper, he feels no more doubt of the due execution of the paper than if he distinctly recollected all the circumstances. We must take it, therefore, that this will was signed when it was acknowledged before the witness *Hendrick.* That acknowledgment is proof, *prima facie,* that it was signed by the testator himself. But if the signature was, in fact, by some other person, then the acknowledgment is a ratification of the signature, and from that ratification we may fairly infer, that the signature was made in his presence and by his direction." And in the same case, at page 449, the President Judge (Tucker) gives the like effect to the testimony of the same witness, by saying: "For *Hendrick* says the paper produced at the trial was that which was acknowledged, and we must therefore presume it was signed as we see it, in the absence of proof to the contrary."

In the case before us there is not a particle of proof which suggests the slightest suspicion of any unfairness in regard to the will. And the sanity of the testator is admitted.

We have seen that the two witnesses who signed first are both dead, and their signatures are proved to be genuine. They were men of integrity, having business habits, and the first of the two very remarkable as a man of business. In the absence of proof to the contrary, these circumstances, in such a case as this, justify the legal presumption that the requisites of the law have been complied with, so far as relates to the execution of the will in the presence of those witnesses, when that presumption is supported by the testimony of the surviving witness. And here we think it is. This witness being in the street was requested by the testator to come over and put his name to his *will.* The name of the witness was put to a paper in the presence of the testator, and Motter, a very intelligent man of business, whose name (proved to be genuine) appears first upon the instrument as a witness; Welty, the surviving witness, never having signed any other paper for the testator or at his request. The paper in dispute has upon it the genuine signature of Welty as a witness, his name being last in the order of signing. From such facts how can we come to any other conclusion than that the will which the

testator requested the witness to put his name to is the paper in controversy? And if it is there was an acknowledgment of this paper as his will by the testator to the witness; which acknowledgment having been made, when, from the face of the paper itself, in connection with the testimony of Welty, it appears the two first named witnesses had previously attested it, they being men of integrity and of business habits, the legitimate inference is, that the name of the testator appearing thereon is his handwriting, or was placed there by his authority and in his presence, and was there when the paper was attested by the first witnesses. We therefore think the orphans court were right in admitting this will to probate.

The cases of *Jackson vs. Le Grange*, 19 *Johns.*, 386, and *Jackson vs. Vickory*, 1 *Wend.*, 406, were both actions of eject-ment, and differ materially from this. In the first, but one witness was examined who did not prove the perfect execution of the will; one of the witnesses was dead, but the third was living, and within the jurisdiction of the court. In the other case the only witness called to testify failed to prove that the requirements of the law had been complied with, and the other two witnesses were alive and within the court's jurisdiction.

*Order affirmed.*