JAMES T. ROBINSON, EXECUTOR, ETC., *vs.* ALBERT N. JONES.

*Wills—Testamentary Capacity—Hypothetical Question to Experts Not Based on the Evidence—Immaterial Issue—Instructions—Attestation of Will—Evidence.*

Upon the trial of a caveat to the will of a woman, executed three days before her death, the testimony of the attending physician was that a few days before the making of the will, considering her disease (cancer), to be incurable, he directed that certain narcotics should be given to her at certain intervals and that she should be kept under their influence; that he did not personally know whether the medicine prescribed had been administered and that he did not see her on the day she made

her will. Other witnesses for the caveator testified that on that day she was in a stupor, but this was contradicted by witnesses for the cav-eatees. The caveators then asked physicians, called as experts, who had not seen the testatrix, what would have been the effect upon her mental condition if she had taken the medicines prescribed by the at-tending physician in the quantities and as frequently as directed. *Held*, that this question is incompetent because the evidence does not tend to prove that the medicines were administered in the quantities and with the frequency prescribed and consequently the hypothetical question was based on facts not proved.

When the question raised by a caveat to a will is its validity *vel non* as dependent on testamentary capacity, an issue as to whether the will had been admitted to probate before the filing of the caveat is imma-terial and improper. And the jury should be instructed to that effect and not permitted to make a finding on such issue.

When the evidence is undisputed that a testatrix requested the witnesses to attest her will, a prayer of the caveatees requiring the jury to find that the witnesses signed the will in the presence of the testatrix "with-out objection on her part," was modified by the trial Judge by substi-tuting the words, "with her assent." . *Held*, that this change was not prejudicial.

When the draughtsman of a will signed the name of the testatrix to it before calling the attesting witnesses, and after they had come into her presence she made a mark and acknowledged the signature to be hers, that is a sufficient signing of the instrument.

Evidence that a witness had made certain statements to third parties is hearsay and inadmissible. When such evidence is offered for the pur-pose of contradicting a witness, a foundation must first be laid for its introduction by asking the witness if she had made such statements.

*Decided February 14th, 1907.*

Appeal from the Circuit Court for Dorchester County (LLOYD, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*F. H. Fletcher* and *W. N. Andrews* (with whom was *Phil-lips Lee Goldsborough* on the brief), for the appellant.

*John R. Pattison* and *E. C. Harrington*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from rulings of the Circuit Court for Dorchester County made during the trial of issues under a caveat to an alleged will of the late Mary A. Jones. The issues had been sent for trial to the Circuit Court from the Orphans' Court of the same county, where they had been framed in a form agreed upon by the counsel for all parties to the controversy. The issues were

"(1) Was the paper writing, bearing date the 23rd day of May A. D., 1905, and purporting to be the last will and testament of the said Mary A. Jones, executed and attested, in due form, as required by law?

(2) Was the said Mary A. Jones, on the twenty-third day of May A. D., 1905, at the time said paper writing, dated as aforesaid, and purporting to be her last will and testament, was executed, of sound and disposing mind, and capable of executing a valid deed or contract?

(3) Was the said paper writing, purporting to be the last will and testament of the said Mary A. Jones, procured by undue influence, exercised and practised upon her?

(4) Were the contents of the paper writing, mentioned in the proceedings in this case, purporting to be the last will and testament of the said Mary A. Jones, bearing date the twenty-third day of May A. D., 1905, read to or by the said Mary A. Jones, or known to her, at or before the time of the alleged execution thereof?

(5) Is the said paper writing, purporting to be the last will and testament of the said Mary A. Jones, the last will and testament of the said Mary A. Jones?

(6) Was the said paper writing, purporting to be the last will and testament of the said Mary A. Jones, and dated the twenty-third day of May, A. D. 1905, admitted to probate, as her last will and testament, by the Orphans' Court or by the Register of Wills of Dorchester County, previous to the filing with the said Register of Wills, or with said Orphans' Court, of any caveat against said paper writing, as her last will and testament?

(7) What parts (if any) of said paper writing were unknown to or misunderstood by said Mary A. Jones, at the time of the alleged execution thereof.

(8) What part or parts (if any) of said paper writing were procured by undue influence, exercised and practiced upon the said Mary A. Jones."

At the trial in the Circuit Court the verdict was, on issues Nos. 1, 2, 4 and 5 for the caveators—on issue No. 3, for the caveatees—on issue No. 6 "no probate"—on issue No. 7 "all parts unknown"—and on issue No. 8 it was for the caveatees "none."

The element of undue influence was eliminated from the case by the action of the Circuit Court, at the close of the evidence for the caveator, in granting the caveatees prayers asserting that there was no legally sufficient evidence to warrant a verdict for the caveator under the third and eighth issues. The substantial questions raised by the other issues, except the sixth which will be noticed hereafter, were the testamentary capacity of the deceased, the due execution of her will and her knowledge of its contents when she made it. At the argument of the appeal in this Court it was stated by counsel for all parties that the issue of testamentary capacity was the one on which the case hinged.

It appears from the uncontradicted evidence that the testatrix was about seventy-seven years old when she made her will on Tuesday, May 23rd, 1905, and that she died three days thereafter. She left surviving her but one child, the caveator, Albert F. Jones, who was about forty years old and had three living children, two grown daughters and one young son named Mobray. Her entire estate real and personal was worth about three thousand dollars. By her will she gave to her son, Albert F., the plantation, on which he formerly lived, for his life with remainder to his children, and to Albert's son, Mobray, she gave her money in the savings bank to be paid to him at stated times. The residue of her estate, after the payment of her debts including proper compensation to George D. Murphy and his wife for their attention to her during her

sickness, she gave in equal shares to her son Albert and his children.

She had been a widow for some years and during the four years prior to her death she had spent much of her time at the house of George D. Murphy where she died. For some-time prior to her death she suffered from a tumor on her breast and a cancer in her stomach which ultimately destroyed her life. What may be described as her last illness lasted from May 14th to 26th, 1905, during which period she suffered great pain.

Dr. Connoway, who was her medical attendant during her last illness, was put upon the witness stand by the caveators and testified in substance as follows. He called to see her on the 14th of May and prescribed for her without making a thorough examination of her case. By the 19th he became convinced that she was beyond the reach of curative efforts and he then "directed his treatment towards allaying and relieving her suffering and placed her on opiates, opium, morphia and tincture of *cannabis indica* to be given every three hours alternatively in doses of 2 grs. opium, 1-6 gr. morphia and 20 to 30 drops of *cannabis indica*, unless asleep, and often enough to keep her under the influence of it." He gave the medicine for Mrs. Jones to Mrs. Murphy with whom he testified that he left about ½ dozen pills on each occasion and also left the bottle of *cannabis indica*. He did not know whether the medicines prescribed by him had been given to Mrs. Jones or not, he said Mrs. Murphy told him that she had given them as prescribed but does not say whether she said so before or after the will was made. He further testified that on May 21st he found Mrs. Jones in a very weak and almost insensible condition but admitted that he then at the request of Mrs. Murphy and to please her, "told Mrs. Jones that she was not going to live long and that if she had any business to fix she had better do it, and she replied that she had none, that all her business was attended to." Upon cross-examination he said that "he knew nothing about her condition on May 23rd, the day on which she made the will, from seeing her as

he did not see her on that day, but from professional knowledge he knew what it must have been," but he did not say what he thought her condition must then have been.

There was, as there usually is in such cases, much very conflicting non-expert testimony as to the testamentary capacity of the testatrix when she made her will. The witnesses who knew her agreed that she was, when in a normal condition, a person of intelligence with a fair degree of business ability and some of them regarded her as unusually shrewd and capable. The witnesses for the caveator in describing her condition on the 22nd and 23rd of May said that she seemed to be "in a stupor," "her eyes half closed," "mouth half open," unable to recognize the friends who spoke to her and not noticing anybody or anything, &c. On the other hand the witnesses for the caveatees, including the subscribing witnesses to the will, testified positively that at and about the time of the execution of the will the mind of the testatrix was clear and that she fully understood what she was about. James T. Robinson, the draughtsman of the will, testified that on May 23rd when he took her instructions for the will "he found her mind perfectly clear, that she gave him full directions how to draw the will telling him of her property and how she wished it left" * * * "that he drew the will exactly as she directed him and read it over to her twice before it was signed" and that she approved each and every part of it.

With this conflicting non-expert testimony upon the crucial point in the case before the jury their minds would naturally turn for assistance in reaching a conclusion to the expert medical testimony produced before them as to the probable effect upon the testatrix' mental condition of the narcotic remedies which Dr. Connoway had directed to be administered to her for some days prior to the making of her will. It was under these circumstances of especial importance for the Court to exercise a strict supervision over the admission of that class of evidence. In the *Berry will case*, 93 Md. 560, we commented somewhat at length upon the danger of reach-

ing inaccurate conclusions by placing much reliance upon expert testimony founded upon mere hypothesis. We there said "it is of the utmost importance when the testator is not present to speak for himself, or to be seen by the jury or to be personally examined as to his mental condition that especial care be taken by the Courts to restrict within the narrowest limits consistent with settled rules of law this hazardous species of evidence." It would be highly improper to permit to be put to the expert witness a hypothetical question based upon assumed facts which the evidence in the case neither proved nor tended to prove.

In the present case the caveator to prove the mental condition of the testatrix when she made the will put upon the stand Dr. Guy Steele, who had practiced medicine for nine years, and Dr. John Mace, who had practiced medicine for eighteen years, but neither of whom had ever seen the testatrix. Each one of these two physicians was asked by the counsel for the caveator the following question: "Please state had Mary A. Jones taken the medicine prescribed by Dr. Connoway in the quantities prescribed by him and as frequently as he prescribed it between the 14th of May and the 23rd of May the day on which she executed a paper purporting to be her last will and testament what would have been the effect of the same on her mental condition if any?" The caveatees in each instance objected to the asking of the question but their objection was overruled and they excepted to the ruling. The answer of Dr. Steele tended to prove that the testatrix, had she taken the medicines as stated in the question, would during the time therein mentioned have been in a profound stupor. The answer of Dr. Mace had a similar tendency though not so positive in tone.

The action of the Court in admitting this testimony was erroneous because the evidence in the record neither proves nor tends to prove that Dr. Connoway's medicines were administered to the testatrix *in the quantities and with the frequency prescribed by him* which were fundamental conditions of the hypothesis upon which the questions put to the two doctors

was based. Mrs. Murphy, with whom the doctor left the medicines, testified that no other person than she gave the testatrix any medicine and that "she gave her one white pill on Monday before the will and some liquid on that day which was toddy, that she gave her toddy out of a bottle and that the toddy was administered to her frequently every day. That she only gave her two black pills, one on Thursday following the will and another one later, that this was the only medicine given her in her sickness except some paragoric which was gotten from Mr. Crocheron and one dose of the liquid on May 14th, 1905. * * * That she told Dr. Connoway the day after the will was made that Mrs. Jones would not take the medicine that there was no use to leave any more. Jennie Mills testified to having seen Mrs. Murphy give medicine to the testatrix twice within an hour, once a pill and once liquid from a bottle. Ann Hurley who was employed as nurse for the deceased from May 22nd to her death testified that Mrs. Murphy gave the deceased some toddy on the 22nd and further said that while she was there Mrs. Murphy gave the deceased the pills regularly, but does not say how often, and as much more frequently as was necessary to relieve the pain. Martha Powell also testified to having seen Mrs. Murphy give the deceased pills twice on Monday within an hour. None of this testimony tends to prove that Dr. Connoway's medicines were administered to the deceased *in the quantities* and *with the frequency prescribed by him*, or to lay any proper foundation for the hypothetical question put to the expert witnesses. The hypothetical question itself was not directed to the condition of the testatrix at the time of the execution of the will as the law requires when the effort is to prove incapacity, but it was so framed as to apply to her condition *between* the 14th and the 23rd, the day on which she made her will.

The sixth issue, presenting the question whether the will of Mrs. Jones had been admitted to probate by the Orphans' Court or Register of Wills before the filing of the caveat, was an immaterial and improper one. It was immaterial because the question raised by the caveat was the *validity vel non* of

the will which was in no sense dependent upon whether it had or had not been admitted to probate by the Orphans' Court or Register before the filing of the caveat. The issue was improper because if it was desirable to have the validity of the action of the Orphans' Court or Register in reference to the probate of the will passed upon that should have been done directly by an appeal from the Orphans' Court and not attempted to be done collaterally in a proceeding like this. *Stanley* v. *Safe Deposit Co.*, 88 Md. 401. Having determined that this issue was an improper one we deem it unnecessary to advert to the question of what action on the part of the Orphans' Court or Register will amount to an admission to probate of a will, further than to refer to the case of *Tilghman* v. *France*, 99 Md. 611, where that question is fully considered and determined.

At the close of the caveator's case the caveatee offered eight prayers, each of which asked the Court to take one of the issues from the jury for want of legally sufficient evidence to sustain it. The Court granted the third and eighth prayers withdrawing from the jury the third and eighth issues, which raised the question of undue influence, and rejected the others. The caveatee then at the close of the entire case again presented the six rejected prayers and the Court again rejected them. As it was practically conceded by counsel at the hearing before us that the evidence did not support the allegation that the execution of the will had been procured by undue influence we do not review that evidence but content ourselves with saying that we find no error in the granting of the third and eighth prayers. Nor do we find any error in the rejection of the other six of these prayers of the caveatees. This disposes of the twelfth bill of exceptions.

The caveators at the close of the case offered seven prayers, all of which the Court granted. Each of these prayers, except the sixth, is a substantial copy of one of the granted prayers in *Etchison* v. *Etchison*, 53 Md. 348, or *Struth* v. *Decker*, 100 Md. 368, and we find no reversible error in their application by the Court below to the facts of the present case.

The sixth prayer instructed the jury that there was no evidence in the case that the will had been admitted to probate and therefore the verdict must be for the caveator on the sixth issue.    That issue being an immaterial one the finding of the jury upon it either way would not affect the validity of the will.    *Stirling* v. *Stirling*, 64 Md. 144.    The Court therefore should have instructed the jury to that effect and should not have granted the caveators sixth prayer.

The caveator, in addition to his prayers already mentioned, offered eight other prayers at the close of the case of which the Court granted those designated 1a, 4a, and 5a as offered, and 2a, 3a and 8a with modifications, and rejected 6a and 7a.

The 2a prayer in referring to the attestation of the will used the expression "the said subscribing witnesses signed said paper writing in the presence of the said Mary A. Jones *without objection on her part* she knowing that they were signing as such witnesses."    The Court substituted the words "with her assent" for "without objection on her part" and then granted the prayer.    As the witness Robinson who drew the will and was one of the subscribing witnesses testified that when it was ready for execution the testatrix told him whom she wished to witness it and he went down stairs and brought those persons to the testatrix' room and then requested them in her presence to sign it as witnesses, and his testimony as to the circumstances of the attestation of the will is corroborated by the other subscribing witnesses, the assent of the testatrix to the attestation of the will was practically undisputed, and the modification of the prayer did the appellant no injury.

The Court modified the caveatees' 3a prayer by striking out at the end of it the words "although they further find that the name 'Mary A. Jones' was signed to the will out of the presence of the subscribing witness."    The striking out of these words was erroneous.    The undisputed evidence shows that the draughtsman of the will signed the testatrix' name to it before calling the witnesses and that the testatrix after all three of the witnesses had come into her presence made her mark and acknowledged the signature to be hers, which was

a sufficient signing of the instrument by her. *Stirling* v. *Stirling*, 64 Md. 144; *Moale* v. *Cutting*, 59 Md. 519.

We find no reversible error in the Court's action on the other prayers of the caveatees.

There are in all seventeen bills of exceptions in the record of which the twelfth, sixteenth and seventeeth, being to the action of the Court on the prayers, have been disposed of by what we have said on that subject.

The fourth, fifth, seventh and eighth exceptions relating to the admission of testimony in support of the allegations of undue influence have been disposed of by what we have said in reference to the Court's action on the prayers addressed to the third and eighth issues.

The tenth and eleventh exceptions having been taken to the allowing the hypothetical questions to the medical experts require no further notice at our hands.

The thirteenth, fourteenth and fifteenth exceptions were to the testimony of witnesses as to alleged statements of Mrs. Murphy as to the mental condition of the testatrix. That testimony should have been excluded as hearsay. If it was offered for the purpose of contradicting Mrs. Murphy's testimony no proper foundation had been laid for its introduction by asking her when on the stand if she had made the statements attributed to her.

We find no reversible error in the Court's rulings on evidence brought up by the other exceptions.

For the reasons set forth in this opinion those of the rulings of the Court below which have been held to have been erroneous must be reversed and the case remanded for a new trial.

*Rulings reversed and case remanded
for a new trial.*