WOODSTOCK COLLEGE OF BALTIMORE COUNTY,
MARYLAND, A Corporation, et al.,

*vs.*

JOHN H. HANKEY and THE FARMERS AND ME-
CHANICS NATIONAL BANK OF FREDERICK
CITY, MARYLAND, Administrator of
George E. Hankey, Deceased.

*Wills: execution; attesting witnesses; method; probate; effect of
attestation clause.   Revocation of wills: Code provisions;
mere alterations do not suffice.   Appeals: records;
part of testimony omitted; supplemental rec-
ord; when no cause for dismissal.*

A witness to a paper which revealed its character as a last will
and testament stated in an affidavit that he had signed as a wit-
ness, in the presence of the testator, and the affidavit continued
that he was not told and could not swear that the paper was a
will, or that the testator was capable at the time of executing a
valid deed or contract; it was: *Held,* that this negative testi-
mony was not sufficient to overcome the presumption of sanity,
or constitute ground for refusal to admit the will to probate.

p. 681

The mere fact that an executed will was not kept by the tes-
tator in the same places with the same care as he kept other

important papers, is no evidence that its revocation was intended.                                                      p. 684

Mere verbal declarations or trifling corrections, as of the county where a legatee resided, the description being otherwise clear and correct, are not sufficient to impair the validity of a will.                                                        p. 684

Where a part of the testimony taken in the Orphans' Court was omitted from the transcript of the record on appeal, but the omission is supplied by a supplemental record, and no prejudice caused thereby, no grounds are presented to justify dismissing the appeal.                                          p. 685

In Maryland, in 1874, wills of personal property did not require attestation, and three witnesses were necessary to the valid execution of wills of realty.                        p. 679

In general, the attestation clause of a will is *prima facie* evidence of the facts recited therein.                           p. 680

The testamentary law does not require that the testator sign in the presence of the attesting witnesses, or that the witnesses sign in each other's presence.                              p. 680

But when the instrument is signed by the testator out of the presence of the witnesses, he should acknowledge it to them as his act.                                                   p. 680

It is not necessary that the acknowledgment should be verbal where the conduct of the testator, or the paper itself, apprises the witnesses of the fact that the paper is a last will and testament, and that he desired it to be attested by such witnesses as were present.                                              p. 683

By statute (Code, Art. 93, sec. 353), proof of the signature of a deceased witness is given the same effect as if he had been present at the probate and testified to the valid execution of the will.                                                       p. 681

*Decided January 10th, 1917.*

Appeal from the Orphans' Court of Frederick County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON. URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ed. J. Smith* and *Alfred J. Shriver* (with whom was *John Francis Smith* on the brief), for the appellants.

*Frank Gosnell* and *Wm. L. Marbury* (with whom was *Frank L. Stoner* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Frederick County refusing to admit to probate a paper purporting to be the will of George E. Hankey, late of Frederick County, who died on December 20, 1915, leaving real and personal property of considerable value. Upon the theory that Mr. Hankey died intestate, no will having been found among his papers, administration upon his personal estate was granted to the appellees on December 29, 1915. About a month later one of the administrators, in the course of his examination of the contents of a storage room adjoining the bedroom occupied by the decedent in his lifetime, discovered, among a lot of miscellaneous papers, the document now in dispute. It purports to be the last will and testament of George E. Hankey, executed December 30, 1874, and is attested by the signatures of three witnesses. This paper was filed for probate by the administrators, through their attorney, and two of the witnesses, the other being dead, made affidavits in regard to their attestation. The affidavit of William N. Hoffman, an attesting witness, was to the effect that he did not see the testator sign the will, but heard him declare it to be his last will and testament; that at the time of so doing he was, to the best of the affiant's apprehension, of sound and disposing mind and capable of executing a valid deed or contract; that the affiant subscribed his name

as a witness to the will in the presence and at the request of the testator, but to the best of his knowledge no other person was then present; and that he did not see the other subscribing witnesses sign their names to the instrument. The other living witness, James A. Taylor, made affidavit that he did not see the testator sign the will; that the testator did not tell the affiant it was a will he was attesting; and therefore he could not swear it was a will; that he could not say the testator was at the time of sound and disposing mind and capable of executing a valid deed or contract, nor could he state that when he attested the paper there was anyone present but the testator and himself, or that he saw the other subscribing witnesses sign their names to the paper; but that he was certain as to the fact of his having attached thereto his own signature.

The proof furnished by the affidavits we have summarized was not considered by the Orphans' Court to be sufficient to justify the admission of the will to probate, but no order was then passed for its rejection. A petition was subsequently filed by the appellants, as legatees under the will, alleging that it was validly executed and attested, and requesting that it be admitted to probate. It was charged in the petition that the affidavits made by the surviving witnesses did not correctly state their real knowledge on the subject, as communicated to the Deputy Register of Wills by whom the affidavits were prepared and the oaths administered. The administrators answered the petition and disputed the validity of the alleged will, asserting that it was found among a lot of old discarded papers; that there are erasures and changes in its provisions, and that it was not executed and attested as required by law. The answer denies that the affidavits made by the attesting witnesses were in any respect erroneous.

At the hearing of the case before the Orphans' Court the signature of Lewis E. Thomas, the deceased witness to the will, was duly proved. The surviving witnesses deposed to the same facts stated in their respective affidavits, except that

Mr. Hoffman said he could not remember whether or not the other witnesses were present when he signed, and that he did not intend his affidavit to make a positive statement as to their absence, and except also that Mr. Taylor testified he did not mean his affidavit to indicate any doubt as to the testator's mental capacity. The Deputy Register of Wills who prepared the affidavits vouched for their accuracy according to his understanding of the statements made by the witnesses at the time. For the purposes of the present question the qualifications which the attesting witnesses have made as to their first depositions are not important. It is immaterial whether Mr. Hoffman stated in his affidavit that he did not sign in the presence of the other witnesses, and it is not a vital inquiry whether Mr. Taylor deposed that he could not express an opinion as to the capacity of the testator to make a valid deed or contract. These subjects were discussed when the affidavits were in course of preparation, and the Deputy Register had no possible interest in varying the statements of the witnesses as they were then understood. There is no occasion to doubt the honesty of purpose of anyone concerned in the proceeding.

Under the law of this State in force at the time of the execution of the paper in controversy, wills of personal property did not require attestation, while three subscribing witnesses were necessary to the valid execution of wills of real estate. Act of 1798, Chapter 101; Code of 1860, Article 93, section 301; Act of 1884, Chapter 293; *Lindsay* v. *Wilson,* 103 Md. 265. Whether the present instrument would be valid to the extent of its dispositions of personalty, even if not effective to pass realty, is a question raised in argument which we need not discuss, because we are of opinion that it is validly executed for both of those testamentary purposes.

The names of the three witnesses are subscribed to the will beneath the signature of the testator, and to the right of an attestation clause which recites that the will was signed, sealed, published and declared in their presence by the tes-

tator, and that they, at his request, in his presence and in the presence of each other, signed their names thereto as witnesses. The attestation clause is itself *prima facie* evidence of the facts therein recited. *Conrades* v. *Heller,* 119 Md. 461; 40 *Cyc.* 1125. But the formalities it describes are in excess of those required by the law. There is no provision in the statute, then or now in force, that the testator must sign in the presence of the witnesses, or that they must sign in each other's presence. It is provided simply that the will shall be in writing and signed by the testator, or by some person for him in his presence and by his express direction, "and shall be attested and subscribed in the presence of the said devisor" by credible witnesses to the number of "three or four," if the will was executed prior to 1884, and "two or more," if it is of a later date. In construing and applying the statute, this Court has emphasized the fact that it does not require the witnesses to see the testator sign the will, or to observe each other attest its execution. *Stirling* v. *Stirling,* 64 Md. 138; *Conrades* v. *Heller, supra; Robinson* v. *Jones,* 105 Md. 71; *Etchison* v. *Etchison,* 53 Md. 357; *Welty* v. *Welty,* 8 Md. 22. The statements in the affidavits and testimony to the effect that the testator did not sign in the presence of the two deposing witnesses, and that they may not have attested the will in the presence of each other, may therefore be entirely disregarded. The only material inquiry, as the testator's own signature is proven beyond dispute, is whether the will was "attested and subscribed" in his presence by each of those who signed it as witnesses.

It is, of course, essential to the attestation, if the instrument was signed by the testator out of the presence of one or more of the witnesses, that he should in some way acknowledge it to them as his act. The attestation should also be made at the testator's request, express or implied. It is not, however, necessary that the testator should verbally declare the instrument to be his will, if his conduct, or the paper itself, apprises the witnesses of that fact—*Conrades* v. *Hel-*

*ler, Etchison* v. *Etchison, supra;* nor is it requisite that he
should formally ask them to sign and attest the paper, his
implied assent being sufficient. *Gross* v. *Burneston,* 91 Md.
387; *Robinson* v. *Jones, supra; Higgins* v. *Carllon,* 28 Md.
140; *Brengle* v. *Tucker,* 114 Md. 602. In this instance one
of the subscribing witnesses, Mr. Hoffman, states in his affi-
davit that he heard the testator declare the paper to be his
will, and that the affiant subscribed his name as a witness in
the testator's presence and at his request. So far as the
attestation of this witness is concerned, we have explicit proof
that the requirements of the law were fully observed. In the
case of the deceased witness, the proof of his signature is
given by statute the same effect as if he had been present at
the probate and had testified that the will was duly executed.
Code, Art. 93, sect. 353; *Conrades* v. *Heller, supra.* The
third witness, Mr. Taylor, while stating in his affidavit that
he signed as a witness in the presence of the testator, makes
the further statements that he was not told, and therefore
could not swear, that the paper was a will, and that he could
not say that the testator was capable at the time of executing
a valid deed or contract. In the light of the later testimony
of this witness, the allusion in his affidavit to the mental ca-
pacity of the testator could be disregarded, but it is clear that
a negative statement of this nature would not be sufficient to
overcome the presumption of the testator's sanity, or consti-
tute a proper ground for a refusal to admit the will to pro-
bate; *Smith* v. *Shuppner,* 125 Md. 409. The recital as to
the affiant's inability to swear that the paper he signed was
a will, because he was not told that such was its character,
is not conclusive proof, after the lapse of more than forty
years, that the witness was not informed in some way at the
time as to the testamentary quality of the instrument he was
attesting. The presumption is that the recitals of the attesta-
tion clause are true. *Conrades* v. *Heller, supra.* Its decla-
ration that the paper being attested was the will of George
F. Hankey was immediately under the eyes of the witness as

he attached his signature. The two other witnesses and the testator had already signed. Mr. Taylor states that the testator asked him to sign the paper without telling him it was a will, but it would be very remarkable if he could remember all the incidents of an event which occurred so many years ago, and it is highly improbable that, under the circumstances of the request and of his attestation, he did not understand at that time the purpose of the act he was performing. While his memory, which he says is not good, does not enable him to testify that it was a will he was witnessing, yet he does not assert that he was actually unaware of that fact on the remote occasion of its execution in December, 1874. The original will was submitted for our inspection at the hearing, and we observed that the names of the witnesses were signed on the last page of the will, where its concluding language and the signature of the testator were in full view. The will is in the even handwriting of the testator's attorney, James McSherry, Esquire, afterwards Chief Judge of this Court. It was testified by Mr. Taylor that he was called into Mr. Hankey's room, and was asked by him to sign the paper, which was lying on a table, and that he complied with the request and then left the room. With the executed paper placed before him on the table, plainly disclosing the fact that it was a will, and with the attestation clause, already signed by two other witnesses, conveying the same information, it is hard to believe that his mind did not receive the knowledge thus afforded.

' In *Conrades* v. *Heller, supra,* it was said by CHIEF JUDGE BOYD, that, upon the question as to whether the testator acknowledged the will to the witnesses, "it is sufficient if he by word, act, sign or conduct, makes it certain that he intends the paper which he is about to sign to be his will and desires the witnesses to sign it as such. 40 *Cyc.,* 1115-1117." In the case of the present will the testator, instead of announcing verbally to one of the witnesses that the paper was his will, virtually stated that fact through the medium of

the paper itself, which, as executed and placed before the witness, revealed at once its real nature and purpose. By this act the testator clearly indicated that the paper was his will and that he desired it to be attested as such by the witness then in attendance.

In our judgment, the proof as to the execution and attestation of the will is sufficient, under the statute, to justify its admission to probate, and the mere fact that after an interval of forty years one of the witnesses is unable to remember its testamentary character, should not deprive it of the legal efficacy to which his signature was intended to contribute.

Upon the question raised by the allegations of the answer as to the finding of the will among a lot of discarded papers in a storeroom at Mr. Hankey's home, and as to certain erasures and interlineations in the will, we must hold, in view of the evidence, that there is no adequate ground upon which a revocation of the will by the testator can be predicated. The only methods of revoking a will in this State are those prescribed by section 324 of Article 93 of the Code, as follows: "No will in writing devising any lands, tenements, or hereditaments, or bequeathing any goods, chattels or personal property of any kind, as heretofore described, nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent; but all devises and bequests so made shall remain and continue in force until the same be destroyed by burning, cancelling, tearing or obliterating the same by the testator or by his direction, in manner aforesaid, unless the same be altered by some other will or codicil in writing or other writing of the devisor signed as hereinbefore said in the presence of two or more witnesses declaring the same." The administrator who discovered the will testified that it was found "in the old back room which was full of different papers, letters and a lot of rubbish." He was unable to say in

just what part of the room he found the will, as he gathered it up, without recognizing it, among a lot of papers which he took home for examination. The room contained a number of boxes and sacks filled with papers and letters. The impression of the witness seemed to be that the will was in one of the boxes. At the Farmers and Mechanics National Bank of Frederick the testator had a safe deposit box in which he kept his bonds and certificates of stock and some title deeds. This was the place where it might have been supposed that the will also would be kept, but the fact that it was not given the care and protection which other important papers received does not prove that its revocation was intended. It has not been burned, cancelled, torn or obliterated, or revoked by a later will. It remained in the testator's possession until the time of his death without revocation by any of the means specified by the statute for such a purpose, and as his duly executed last will and testament it must be given the recognition which the law accords to such an instrument. *Byers* v. *Hoppe,* 61 Md. 211; *Lowe* v. *Whitridge,* 105 Md. 189; *Sewell* v. *Slingluff,* 57 Md. 548; *Wittman* v. *Goodhand,* 26 Md. 103.

Testimony was offered as to subsequent declarations by the testator inconsistent with some of the provisions of the will, but such evidence was not sufficient or admissible to prove that the will had been revoked. The statute does not permit a formally executed will to be revoked by verbal declarations. This view is emphasized in the cases last cited.

The only erasures and interlineations in the will consist of the striking out of the word "Howard" and the insertion of "Baltimore" as the correct designation of the county in which Woodstock College, one of the legatees, is located, and in the substitution of the name of Martha Batson for that of Arthur Buxton as one of a number of persons to whom the sum of fifty dollars each is bequeathed. These alterations have no effect upon the will in other respects, and clearly do not impair its general validity. *Safe Deposit and Trust Co.* v.

*Thom,* 117 Md. 154; *Home of the Aged* v. *Bantz,* 107 Md. 543, 106 Md. 147; *Eschbach* v. *Collins,* 61 Md. 498.

A motion to dismiss the appeal was made on the ground that a part of the testimony taken before the Orphans' Court was omitted from the transcript of the record on appeal. The deficiency has since been supplied by a supplemental record, and no prejudice to the appellees appears to have resulted from the omission in the first instance, and under such circumstances, as held in *Terminal Heating Co.* v. *Whitelock,* 120 Md. 418, we would not be justified in ordering the appeal dismisesd.

In consequence of the conclusion we have reached, it will be necessary to reverse the order of the Orphans' Court and remand the cause to the end that an order admitting the will to probate may be passed.

*Order reversed, and cause remanded, the costs to be paid out of the estate.*