JEROMIA O'NEAL, Personal Representative of the
Estate of Johnsy Beal Jennings *v.*
HARRIS O. JENNINGS

[No. 618, September Term, 1982.]

*Decided February 3, 1983.*

The cause was argued before MORTON, LISS and GARRITY,
JJ.

*Samuel M. Grant,* with whom were *David J. Preller, Jr.,* and *Preller & Preller* on the brief, for appellant.

*Richard D. Rosenthal* for appellee.

MORTON, J., delivered the opinion of the Court.

Johnsy Beal Jennings, by her last will and testament executed on June 2, 1972, left all of her estate but $1,007 to her sister, Jeromia O'Neal. The will was presented for probate in the Orphans' Court of Baltimore City shortly after the testatrix's death on January 28, 1981. Thereafter, Harris O. Jennings, a nominal beneficiary, filed a caveat to the will, alleging (1) improper form, (2) lack of testamentary capacity, and (3) improper attestation. The Orphans' Court, finding a lack of legal attestation, denied the will for probate. The Superior Court of Baltimore City, after a trial *de novo,* concluded likewise. From the order of that court refusing probate of the will, Jeromia O'Neal, personal representative and principal beneficiary under the will, appeals.

Mrs. Jennings summoned her attorney, Tucker Dearing, to her home for the purpose of executing her will. The will bears the signature of the testatrix. It includes an attestation clause which reads as follows:

> "Subscribed by Johnsy B. Jennings the Testatrix named in the foregoing Will, in the presence of each of us and at the time of making such subscription. The above Instrument was declared by the said Testatrix to be her last Will and Testament, and each of us, at the request of said Testatrix and in her presence and in the presence of each other, signed our names as witnesses thereto, at the end of the Will."

There followed what appears to be the signatures, as witnesses, of Henry Woods and Emma C. Fitzgerald.

The Maryland testamentary statute provides that a will is void unless it is in writing and signed by the testator and is attested and subscribed in the presence of the testator by

two or more credible witnesses. Md. Estates & Trusts Code Ann. § 4-102. While the witnesses need not see the testator sign the will, if they do not, the witnesses must be apprised by the testator's verbal declaration or conduct or by the instrument itself that this is the act of the testator. *Woodstock College v. Hankey,* 129 Md. 675, 680 (1916); *Conrades v. Heller,* 119 Md. 448 (1913). Mr. Woods testified in Superior Court that Mrs. Jennings sent her niece, Bertha Crawley, to bring Mr. Woods to her house; that when he got there, Mrs. Jennings, Ms. Fitzgerald, Mr. Fitzgerald and Mr. Dearing were present; that when the signing took place, Mrs. Jennings "said she was making her will and she wanted us to sign these papers." Emma C. Fitzgerald, who was unavailable for trial in either court but whose deposition was taken shortly before her death, acknowledged the signature as her own, acknowledged Mrs. Jennings' presence, and acknowledged that she was asked by Bertha Crawley to sign something for Mrs. Jennings. The Orphans' Court and the Superior Court refused, however, to permit the will to be probated because Ms. Fitzgerald swore in the eight page deposition taken without the benefit of cross-examination that no one told her, nor did she know, the nature of the document she was signing and that she did not know a Mr. Woods and Mr. Woods was not with her when she signed the will.

While the attestation clause here states that the attesting witnesses signed their names in the presence of each other, the law does not require the witnesses to observe each other attest the execution of the will. *Woodstock College v. Hankey,* 129 Md. at 680. The only material inquiry remaining then is whether the will was properly attested by Ms. Fitzgerald; in particular, whether she was apprised of the fact that the document was a will.

Judge Delaplaine, speaking for the Court of Appeals in *Van Meter v. Van Meter,* 183 Md. 614 (1944), has aptly described the burden the caveator bears before he can establish improper execution in the face of an attestation clause. It was said, at 617-619:

"The rule is well established that *an attestation clause reciting facts necessary for the valid execution of a will is prima facie evidence of the due execution of the will,* if it bears the genuine signatures of the testator and subscribing witnesses. *Woodstock College v. Hankey,* 129 Md. 675, 681, 99 A. 962; *Bioren v. Nesler,* 77 N. J. Eq. 560, 78 A. 201. The presence of an attestation clause with a recital of the formalities required by law is desirable for the purpose of furnishing presumptive evidence when the subscribing witnesses are deceased or beyond the reach of process, and serving as a safeguard against the danger of imperfect recollection or deliberate misrepresentation of the facts. 1 Schouler on Wills, Executors and Administrators, 6th Edition, Sec. 555.

It is true that, even though a person writes his name as a witness to a will under an attestation clause certifying that he attested the testator's signature and that he subscribed his name in the testator's presence, nevertheless he may testify to the contrary, because the court desires to ascertain the truth. The court may refuse to probate where there is nothing but an attestation clause on one side, and decidedly adverse testimony of the subscribing witnesses on the other. *But the prima facie presumption that the recitals of the attestation clause are true will not usually be overcome merely by the fact that one of the subscribing witnesses testifies that the statutory requirements were not complied with. Hoover v. Keller,* 339 Ill. 126, 171 N.E. 163. As the attestation clause preserves in permanent form a record of the facts attending the execution of the will and is prima facie evidence of the facts therein stated, *the burden of proof is upon the caveator to show by clear and convincing evidence that the facts therein*

*stated are not true. In re Seymour's Will,* N. J., 114 A. 799. The court views such contradictory testimony with great caution and scans it with grave suspicion, because the testimony after the testator's death contradicts the written evidence given on the instrument during the testator's lifetime, and thus reflects on his own credibility, and is contrary to the confidence placed in him by the testator. *Massey v. Reynolds,* 213 Ala. 178, 104 So. 494, 498; *Stuck v. Howard,* 213 Ala. 184, 104 So. 500, 504. To permit a subscribing witness easily to overcome his formal and solemn declaration of attestation by oral statement that he did not sign [as attested to] would have the result of leaving every will open to attack by subscribing witnesses." (Emphasis supplied.)

*See also McIntyre v. Saltysiak,* 205 Md. 415, 421-422 (1954).

The attestation clause, signed by Mr. Woods and Ms. Fitzgerald, raised a prima facie presumption that the will was duly executed.[1] The presumption of due execution can be overcome only by clear and convincing evidence to the contrary. The deposition of Emma Fitzgerald, the only evidence to the contrary, must, under the standard set out in *Van Meter, supra,* be viewed with "great caution" and "grave suspicion" by virtue of the fact that it is, first, the repudiation of a formal statement and, second, surrounded by questionable circumstances. The witness was 78 years old at the time she gave her deposition in which she related an incident that had occurred seven years earlier; just three days before giving the deposition she had been released from the hospital for treatment of a slight stroke and a diabetic condition; and she appeared quite annoyed with, and, more importantly, may not have understood, the questions put to her:

---

1. As the Court of Appeals wisely stated long ago in Conrades v. Heller, *supra,* at 461, "[i]ndeed if that were not so how could a will ever be properly probated when the witnesses are all dead or absent?"

"If you come [to] my door anymore you're not coming in. . . . *You just asked me a lot of I don't know what.* Do what you want to do with it I told you I signed this and I didn't know what I signed. Don't come back and ask me no more questions." (Emphasis supplied.)

Of additional significance is the lack of cross-examination. While we cannot penalize the caveator for the dismal failure of appellant's counsel to attend the deposition, the consequence of it --- uncertainty — remains.

Ms. Fitzgerald knew that Mrs. Jennings wanted her to sign something. Mr. Woods testified that Mrs. Jennings stated that it was her will. The attestation clause directly above Ms. Fitzgerald's signature states three times within five lines that the instrument was a will. Ms. Fitzgerald's short statement, years later, that she did not know it was a will is not clear and convincing evidence that she was not in fact apprised either by declaration or conduct of Mrs. Jennings or by the paper itself, that the document was Mrs. Jennings' will. *See Woodstock College v. Hankey*, 129 Md. at 681-683.

The proof of due execution of the will was sufficient, we think, to justify its admission to probate notwithstanding one witness's inability to remember its testamentary character.

> *Order reversed and case remanded for further proceedings; costs to be paid by appellee.*