— SEMMES *vs.* SEMMES, *et al.*—June, 1826.

The cancelling of a will by a testator is an equivocal act, and does not amount to a revocation unless it is done *animo revocandi.*

Where it is a dependant relative act, done with reference to another will, which the testator thinks he has legally executed, it may be a revocation or not, as such other will is valid or not. As where a testator, having executed one will, causes another to be prepared, and cancels the first, only because he supposes the second to be duly executed, the cancelling the first will not operate as a revocation of it, if the second proves to have been improperly executed. But where the cancelling is deliberately done without accident or mistake, it will operate as a revocation, notwithstanding the party may at the time have intended to make another will, and afterwards omitted to make it.

The cancelling in this case declared to be a revocation.

APPEAL from a decree of the Orphans Court of *Charles* county, refusing to admit to probat and record a paper offered as the last will and testament of *Ignatius Semmes,* deceased.

The cause, (which is sufficiently explained in the opinion delivered by this court,) was argued before BUCHANAN, Ch. J and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Stonestreet,* for the Appellant, objected to the decree of the orphans court—1. Because it did not appear that the deceased made the obliterations which appeared on the face of the will. 2. Because if he did, they were made with a view to a new will, which was never perfected, and not with a design to an intestacy.

On the *first* point, he insisted that the *onus probandi* of the obliterations, was on the party who attempted to set aside the will. He cited *Onions vs. Tyrer,* 1 *P. Wms.* 343, *(note.)*

On the *second* point, he cited *Roper on Wills,* 35, 36. *Goodright vs. Glazier,* 4 *Burr.* 2515. *Onions vs. Tyrer,* 1 *P. Wms.* 343; and *Gilb. Evid.* 246, 427.

*C. Dorsey* and *Brawner,* for the Appellees, cited *Roper on Wills,* 35, 36. *Pow. on Dev.* 422. 8 *Vin. Ab.* 142, 143.

*Taney*, in reply. The *memorandum* made at the foot of the will, shows that the testator did not mean to revoke the devises in his will, except as concerned his deceased wife. His mind was not changed as to any other part of his will. His declarations as proved, show that he did not mean to die intestate; and the will was found after his death, among his most valuable papers. His not mentioning to Col. *Merrick*, who had drawn his will, and with whom he was in company when in *Baltimore*, that he intended to make another will, when his then state of health would naturally call his attention to the subject, shows that he did not consider his will as revoked.

BUCHANAN, Ch. J. delivered the opinion of the Court. It is objected, on the part of the appellant, that the orphans court did wrong in not admitting to probate a paper, purporting to have been a duly executed will of *Ignatius Semmes*, on two grounds: *First.* Because the obliterating the name of *Ignatius Semmes*, and also the names of the three subscribing witnesses, does not appear to have been done by the deceased; and *secondly.* That if it was, it did not amount to a revocation of the will.

With respect to the first proposition, it does not appear to admit of a doubt, that each obliteration was made by the deceased *Ignatius Semmes*.

The *memorandum* at the foot of the paper, and just below the signatures, in these words—"In consequence of the death of my wife, it is become necessary to make another will," and signed *Ignatius Semmes*, is admitted to be in his handwriting. The obliterations were made by drawing a pen frequently, and in different directions, across his own signature, and the names of the subscribing witnesses; and the ink with which it was done, is proved to have been the same with which the memorandum at the foot of that paper was written. Hence it is manifest, that the obliterations, and the memorandum, were simultaneous acts, and by the deceased himself; and it would be straining overmuch to admit the supposition, that it might have been surreptitiously done by another, in the absence of any testimony to cast the slightest shade of suspicion upon any body. The memorandum must be considered as connected

with the obliterations as a part of the *res gesta,* and as explanatory of the transaction. It is equivalent to a declaration, that he had made the obliterations, for the reason assigned, (the death of his wife,) which made it necessary to make another will.

Considering then the obliterations to have been made by the deceased, the second objection presents itself, to wit, that the will was not thereby revoked; in support of which several authorities were cited and relied on in argument, but none of them sustain the proposition, and it would be somewhat strange if they did.

In *Onions vs. Tyrer,* 1 *P. Williams,* 343, the deceased, by a will duly executed to pass real estate, devised lands to trustees, to certain uses, and afterwards made another will devising the same lands to other trustees, but to the same uses, with a clause of revocation of the first, and attested by three witnesses, who did not sign their names in the presence of the testator. Supposing the second will to be duly executed to pass real estate, the testator caused the first to be cancelled. But it was determined, that the witnesses to the second, not having signed their names in the presence of the testator, it was void as to the land, and could not therefore have the effect to revoke the former; and the cancelling of the first will, under the presumption that the second was good and effectual, was held not to amount to a revocation of it, on the ground that it was done by mistake. The case of *Hyde vs. Hyde,* 8 *Vin. Ab.* 142, was clearly a case of mistake. And the case of *Mason vs. Limbrey,* cited by Lord *Mansfield,* in 4 *Burr.* 2515, was decided on principles not at all applicable to this case.

The cancelling of a will is said to be an equivocal act, and not to effect a revocation, unless it is done *animo revocandi.* And where it is a dependant relative act, done with reference to another, which is meant and supposed to be good and effectual, it may be a revocation or not, as that to which it relates is efficacious or not. As where a man having duly executed one will, afterwards causes another to be prepared, and supposing the second to be duly executed, under that impression alone cancels the first. In such case it has been held, that on the second turning out not to have been duly executed, the cancelling the first, being done by mistake and misapprehen-

sion, would not operate as a revocation. But never where a man has deliberately and intentionally cancelled his will, as in this case, in the entire absence of all accident or mistake, notwithstanding he may, at the time, have intended to make another will.

It is said, and indeed it would seem from the testimony, that *Ignatius Semmes* did not intend to die intestate, but however that may be, we cannot make a will for him. By the will, which is now attempted to be set up, he had disposed of the whole of his estate to his wife, in trust for the "use and support of herself, and the benefit, education and support," of his infant son until he should arrive at the age of twenty-one years, when he bequeathed one half of his personal property absolutely to his wife; but she dying, he struck out his own signature, and the names of the subscribing witnesses, and made a memorandum at the bottom of the will, assigning as a reason for what he had done, that his wife's death had rendered it necessary to make another will. If that was not a revocation, it would be found difficult to revoke a will by cancelling. In *Burtenshaw vs. Gilbert*, 1 *Cowp.* 49, which was cited in argument, there were two wills, and after the death of the party, the second will, with a duplicate of the first, which he had kept himself, were found together among his papers both cancelled; and it was proved that he had sent for an attorney to prepare another will, but lost his senses before it could be done. It was not doubted that the second will was revoked. The only question raised, was whether the revocation of the second will did not set up the uncancelled duplicate of the first, and it was determined that it did not. That case surely cannot be called in aid of this will.

DECREE AFFIRMED