# HOME FOR THE AGED OF THE METHODIST EPISCOPAL CHURCH *vs.* SALLIE C. BANTZ, Admx.

*Erasures in a will—Caveat—Jurisdiction of Orphans' Court—Estoppel.*

Whether certain erasures and alterations appearing on the face of a will were made by the testator, and if so, whether he possessed at the time of making them testamentary capacity, are questions relating to the *factum* of the will, and are to be determined by the Orphans' Court. Those matters are distinct from the question as to the effect and meaning of such erasures and alterations, which concerns the construction of the will, and is not within the jurisdiction of the Orphans Court.

A will, through some portions of which lines in ink had been drawn, was admitted to probate by the Orphans' Court in common form, without contest, and letters of administration granted. Subsequently, a legatee under the erased portion, filed a caveat in the Orphans' Court alleging that the erasures should be eliminated in the probate, because not contained in the will as originally executed; that at the time of such execution, the testator was of sound mind, but afterwards became insane, and so remained for some years before his death. The petition prayed for the revocation of the former probate of the will in its altered form, and for its admission to probate as it appears without the erasing lines. *Held*, that the legatee in the erased portion has the right to file the petition.

*Held*, further, that the Orphans' Court has jurisdiction of the petition, since the questions raised by it all relate to the *factum* of the will, *i. e.* whether the lines were put npon the will by the testator with the intent to revoke such parts, and if so, whether at the time he possessed testamentary capacity.

A will appointed trustees to hold certain property during the lifetime of the testator's widow. After her death, the residue of the estate was devised to a charitable corporation. The will contained erasures which struck out the residuary devise. In a suit in an equity Court for the administration of the trusts of the will, and the appointment of a new trustee, the residuary devisee filed an answer submitting its rights to the determination of the Court without admitting or denying the allegations of the bill. *Held*, that the residuary devisee is not thereby estopped to file a caveat alleging that the erasures are not a part of the will.

*Decided May 15th, 1907.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*John Philip Hill*, for the appellant.

*Wm. Pinkney Whyte*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City dismissing a caveat filed by the appellant to the last will of Theodore S. Bantz. The bill was admitted to probate in common form without contest on June 15th, 1904,

and the caveat was filed, on September 21st, 1906, within the three years allowed by sec. 33 of Art. 93 of the Code of 1904, for filing caveats to wills. Upon the face of the will as admitted to probate there appear lines drawn through and across certain words but in such manner as not to obliterate them or render them illegible.

The caveat, after alleging the death of the testator leaving surviving him a widow but no children or descendants, states who constitute his heirs at law and next of kin. It then avers the probate of the will in common form with the lines above-mentioned appearing upon its face and asserts that at the time of its execution on September 22nd, 1892, it did not contain those lines and that they are not part of the will and should be eliminated in its probate. The caveat further avers that the will at the time of its execution was placed in the hands of Frederick Leist, Esq., who was the testator's counsel and was named as one of the executors in the will, and that he retained custody of it until his death in 1901, when it came into the possession of the testator for the first time after its execution.

The caveat then alleges that, although the testator was in the full possession of testamentary capacity when he made his will on September 22nd, 1892, he began about November, 1898, to show symptoms of insanity which developed to such an extent that it became necessary on November 23rd, 1902, to confine him in an asylum; and that for many years before his confinement in the asylum he was not capable of making or revoking a will, and that if the lines drawn through and across certain words of the will were put there by him or by his direction they can have no effect as a revocation of any of the provisions of the will.

The prayer of the caveat was for a revocation of the order admitting the will to probate in common form and for its admission to probate without the lines already referred to as appearing upon its face.

The will in question, omitting its formal opening and conclusion, is as follows: "After the payment of all my just debts

and funeral expenses I give, devise and bequeath all my estate and property, real and personal, wherever the same may be unto Joshua T. Young, my *brother Edward Bantz, M. D.*, and Frederick Leist, and the survivors or survivor of them in trust and confidence to hold the same for the term of my wife's Sallie C. Bantz life, and after paying the taxes and necessary expenses thereon, to pay her out of the net income of my estate the sum of one thousand and ninety-five dollars per year during her natural life in quarterly installments of two hundred and seventy-three dollars and seventy-five cents each, and the remainder of the income to be invested by them and held for the purpose of making good any deficiency of the income to my wife Sallie C. Bantz so that she will receive one thousand and ninety-five dollars for every year during her natural life; and at the death of my wife Sallie C. Bantz said trust shall cease, *and the property No. 721 West Lexington street and No. 202 Myrtle avenue shall go to my brother Edward Bantz absolutely, five thousand dollars shall go to Charles C. Bowman, nephew of my first wife, Cecilia Bantz, and four thousand dollars shall go to, in equal shares to Thomas Bowman Smith and Cecelia Bantz Smith, children of George P. Smith and his wife Mary C. Smith, and the rest and residue and remainder of my estate shall go to the Home for the Aged of the Methodist Episcopal Church, located at the southwest corner of Fulton avenue* and Franklin street for the purpose of a dormitory to be known as Cecelia Bantz dormitory." A clause follows granting to the trustees certain powers for the management of the estate, after which the will proceeds to say, "I constitute and appoint Joshua T. Young, *Edward Bantz* and Frederick Leist to be the executors of this my last will and testament (my brother Edward Bantz not to receive *commissions* as trustee and executor as the provision made for him is to be in lieu thereof) hereby revoking all other wills and codicils by me heretofore made." The words here appearing in italics are the ones over which the lines referred to were drawn in the will.

All of the persons named as trustees and executors in the will having died during the lifetime of the testator, letters of

administration *c. t. a.* upon his estate were granted to his widow Sallie C. Bantz the present appellee, by the Orphans' Court, when the will was admitted to probate in common form.

The administratrix *c. t. a.* filed an answer to the caveat setting up a want of jurisdiction in the Orphans' Court to determine the questions presented by it, and further averring that when it was filed she had already completed the administration of the personal estate of the testator in the Orphans' Court and passed over the net balance thereof to Hon. Wm. Pinkney Whyte, who had been appointed trustee, in lieu of those named in the will to execute the trusts thereof, by the Circuit Court of Baltimore City in a suit instituted for that purpose to which all persons interested in the estate, including the appellant, were made parties; and that the appellant had by its answer filed in that suit neither admitted nor denied the allegations of the bill but submitted its rights to the determination of the Circuit Court.    To this answer the appellant demurred.

The Orphans' Court, after hearing the case, filed the order appealed from dismissing the caveat "for the reason that at the time of admitting the will to probate the Court did establish the text of the will as it appeared then, and as to the determining and establishing any rights that might arise under said will it is beyond the Court's jurisdiction." That order was signed by two of the three Judges of the Orphans' Court. The other judge filed a dissenting opinion holding that the matters alleged in the caveat related to the factum of the will and were therefore within the jurisdiction of the Court and that the administratrix should be required to answer the caveat.

We think the Orphans' Court erred in passing the order appealed from.    The will having been admitted to probate without contest in the form in which it then appeared, any one, who would have an interest in the estate if that probate were revoked and a new one granted of the will in its original condition, was entitled to file a caveat to it within three years thereafter, even though letters of administration had been issued upon the personal estate.    Code of 1904, secs 318 and 341.    *Levy* v. *Levy*, 28 Md. 25.    The appellant had such an

interest in the estate as to authorize it to file its caveat for it will be entitled to all of the property passing under the residuary clause of the will if it be admitted to probate in its original form.

The allegations of the caveat present for determination the inquiry whether the lines refered to were put upon the will by the testator or under his direction, and if so whether he thereby intended to revoke the portions of it over which they were drawn.   Even the cancellation of the signature to a will is an equivocal act and does not amount to a revocation unless done *animo revocandi. Semmes* v. *Semmes, 7* H. & J. 388; *Rhodes* v. *Vinson,* 9 Gill, 169; *Colvin* v. *Warford,* 20 Md. 393. If the foregoing inquiries be answered in the affirmative the further question of the testamentary capacity of the testator at the time the lines were drawn is raised by the caveat.   All of these questions relate to the *factum* of the will *i. e.* the making of the instrument, and therefore concern its probate and not its construction and fall within the jurisdiction of the Orphans' Court which under our testamentary system has exclusive jurisdiction in granting or refusing the probate of wills. *Johns* v. *Hodges,* 62 Md. 525.

The question here presented is whether the lines do or do not constitute part of the will and it is entirely distinct from that of the force and effect of erasures, interlineations or alterations confessedly made by the testator appearing in a will whose text has been established, as was the case in *Eschbach* v. *Collins,* 61 Md. 78, and *Ramsay* v. *Welby,* 63 Md. 584. The last mentioned case, which was much relied upon by the appellee, resembles the present case in some respects but upon close examination is plainly distinguishable from it.   In Ramsay's case the interlineations and erasures some in ink and others in lead pencil appearing upon the will, which had been admitted to probate in common form, were confessedly made by the testatrix whose testamentary capacity at the time of making them was not challenged.   No caveat was filed to the will in that case but certain parties interested in the estate filed a petition in the Orphans' Court averring that the changes

in the will made in lead pencil were not to be considered as operative, and setting forth certain constructions of particular provisions of the will as the true and legal effect of the same and praying that the true text of the will might be ascertained and declared and the bequest in their favor secured to them.

The respondent there in her answer set up the want of jurisdiction in the Orphans' Court to adjudicate the questions raised by the petition. The Orphans' Court adopted the respondent's view and dismissed the petition and this Court upon an appeal affirmed the order of dismissal.

This Court affirmed that case solely upon the ground that the questions there raised by the petition did not relate to the mere *factum* of the will or whether the changes in it had been inserted by the testator, but related to the legal construction of its provisions over which the Orphans' Court clearly had no jurisdiction. Our predecessors in that case said (at p. 586) "In the probate nothing is to be determined but what relates to the mere *factum* of the will. What is the legal effect of its provisions is not involved in that proceeding. Undoubtedly, any *clause or portion of the paper-writing propounded as a will may be rejected* if it appears it was not inserted by the testator, or that he had revoked it, or that it was not embraced by the execution. Such facts go to the actual making of the instrument; but all that is embodied in the paper-writing executed by a testator as an integral part of his intended testamentary disposition is to be accepted by the Orphans' Court as entering into his will. The validity and legal construction of the provisions are matters for subsequent determination by the appropriate tribunals. What was in fact admitted to probate as constituting the last will of Susan M. Shield, as set out in the order of probate; and as declared by the Orphans' Court when dismissing the petition was the paper-writing propounded, as made and left by her as her will with all the additions, alterations and erasures appearing therein whether made in ink or pencil.

"*To the extent any of these changes were involved in the mere question of the factum of the will they were open to contest by*

*the parties interested, and might have been raised by appellants*
*in plenary proceedings.* .But the prayer of the petition is con-
fined to no such simple issue.   It calls on the Orphans' Court
to declare the true text of the will not in the sense of merely
reciting or setting out what words are actually .or legibly ap-
parent and unerased in the will (that the Court had already
in effect done), but to determine the operation of the will in
a legal sense as derivable from construction—such construc-
tion embracing the effect to be given the alterations, additions
and erasures with reference to the original text and to be
given to the fact of part of the substituted or added writing
being in pencil and the question of how far such changes were
contingent or absolute, and from such construction to ascer-
tain and declare the rights and interests of the appellant to
certain bequests as operative in law.   It is well settled the
Orphans' Courts are clothed with no such jurisdiction.   Ques-
tions of the nature described can only be determined in the
Courts of law or equity."

It is obvious from what was there said that the views ex-
pressed by the Court in that case are in entire harmony with
the conclusion at which we have arrived in the present one.

Nor do we think that the appearance and answer of the ap-
pellant to the case instituted in the Circuit Court, for the ap-
pointment of a new trustee and the administration of the
trusts of the will under the supervision of that Court, estopped
it from filing or prosecuting the present caveat.   The trusts
of the will relate only to the life estate of the testator's widow..
The portions of the will creating the equitable life estate of
the widow and appointing trustees to hold and manage the
estate for her benefit during her life are not assailed by the
caveat which asserts the validity of the entire instrument
when restored to its alleged original condition with the lines
referred to removed from its face.

The Orphans' Court, instead of dismissing the caveat,
should have required the appellee to answer it and allowed
the case to proceed in the usual manner.   If the proceedings
upon the caveat result in a revocation of the former probate

and the granting of a new one she will be protected for acts done in due course under the letters of administration *c. t. a.* heretofore granted to her upon the will as admitted to probate in common form.

The order appealed from must be reversed and the case remanded for further proceedings in accordance with the views herein expressed.

> *Order reversed with costs to be paid out*
> *of the estate and cause remanded.*