## LUCILLE H. McLAUGHLIN, ET AL. *v.* MAY G. McLAUGHLIN, ET AL.

[No. 91, October Term, 1945.]

*Decided March 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert Conroy* for the appellants.

*Joseph A. Cantrel* for the appellees.

MARKELL, J., delivered the opinion of the Court.

James McLaughlin, of Rockville, died on July 29, 1943. He left a will dated June 28, 1934, duly executed and attested, and a codicil, dated July 20, 1943, signed, but attested by only one witness. On the date of the will his wife, four sons and five daughters were living. Before his death his wife, all the sons and one daughter died. Each of his children who died left one or more children who survived him.

His will, when offered for probate, contained a number of cancellations, interlineations and alterations, which did not make the will, as originally written, illegible. By Item Second he gave $100, changed by interlineation to $200, for masses. By Item Third he gave his wife "her dower interest" in his estate; by Item Fourth he gave $1,000 to each of two daughters (who survived him) and one son. Items Third and Fourth were cancelled *in toto;* Item Fourth was marked "void." By Item Fifth he gave a daughter (who survived) his piano, each of his sons and one grandson specific jewelry, and "all the rest of my jewelry" to "my surviving children." The bequests to the sons and grandson were cancelled. By Item Ninth he gave $200 to each grandchild living at the time of his death, "provided there be sufficient funds to meet this bequest"; by Item Tenth he gave all his "wardrobe"

to his "surviving sons." Items Ninth and Tenth were cancelled and Item Ninth marked "void." By Item Twelfth he named his wife, one daughter and a son-in-law executors; the mention of his wife was cancelled.

Item Eighth (with interlineations italicized and cancellations indicated by a line*) is:

"Eighth: As to all the rest of my estate, real, personal and mixed, I give, devise and bequeath the same to my
*Disaced*
children JOHN, JAMES, GEORGE, WILLIAM, May, Katherine, MARGUERITE, Anna and Helen in equal shares; but should any member of my family precede me in death then his or her share shall be equally divided
*my*
among HIS OR HER surviving children, provided that in the event of the death of any of my said children WITHOUT LAWFUL ISSUE OR OTHER DIRECT HEIR, then his or her share to revert back to my estate."

On August 19, 1943, the two attesting witnesses to the will made the usual affidavit before the Register of Wills. On August 31, 1943, the daughter filed a petition for probate of the will (but not the codicil) and issuance of letters testamentary to herself and the son-in-law; in the petition she named the daughters and seven grandchildren as next of kin and heirs at law. The same day the will was "admitted to probate," apparently in common form, and on the petition a separate order was entered, that the will be admitted to probate and that letters issue to the executors. In these proceedings no mention was made of the cancellations, interlineations and alterations in the will, or of any evidence of the *factum* of the will except the affidavit of the attesting witnesses.

On August 29, 1944, Edith Miriam McLaughlin of New York City, daughter of the testator's son James, filed a petition and caveat, mentioning the changes, interlineations and "attempted cancellations," charging *inter alia* that the will was revoked after execution, and that the

---

* Cancellations above referred to are indicated by capital letters.

changes in Items Second, Fifth and Eighth were not re-executed in the presence of two or more witnesses, were obtained by undue influence and were not made by the testator or "for him in his presence and by his express direction."

On January 30, 1945, an "agreement of compromise and settlement to avoid contest of will," dated December 20, 1944, between the caveatrix and the four surviving daughters of the testator, was filed. The agreement recites that the parties "are the [sic] next of kin and heirs" of the decedent and "have agreed upon a settlement of their rights in the estate" on condition that the caveatrix shall waive her right to prosecute the caveat and shall dismiss the caveat and execute a quit-claim deed to the other parties of all her right, title and interest in and to any and all of the decedent's real estate. The agreement provides that the caveatrix will dismiss the caveat, and "will offer no objection to the approval and passage of the First and Final Administration Account of the executors of the estate," and she waives all her rights in the estate, except as provided in the agreement; that "out of the net income" [sic] of the estate, after deduction of inheritance tax, there shall be paid "upon the final distribution thereof," to the caveatrix "one-ninth of the said net estate which one-ninth amounts to $2,342.19," and to the remaining parties "a one-fourth portion of the remainder of said net income [sic] to each of them." [Apparently "net income" is used inadvertently for "net estate."] The caveatrix agrees to execute to the other parties her quit-claim deed, and they agree to pay her $1,000, "which amount represents a one-ninth portion of the appraised value of the entire real estate."

On February 6, 1945, the caveatrix filed a petition, averring that she "has entered into an agreement of compromise and settlement to avoid a contest of the will * * *, the terms of which * * * agreement have been incorporated into the First and Final Administration Account filed by the Executors," and she "has complied

with the terms of the * * * agreement, and has received all the benefits due her thereunder," and praying an order dismissing the caveat. The same day "upon consideration of the * * * petition, and the Court having approved the Agreement * * *," an order was entered dismissing the caveat.

On March 5, 1945, the appellants, residents of Philadelphia, as grandchildren and heirs (children of the testator's son George), filed a motion to "set aside and vacate" the order dismissing the caveat, on the grounds that (1) at the time of probate George E. McLaughlin (appellant) had not reached the age of twenty-one, and (2) was in the military service of the United States, (3) no notice of the death of the decedent or the petition for probate and record of the will was ever given to or received by the appellants, and (4) the caveat "having been directed to the merits and authenticity of said will, could not be compromised except by consent of all the surviving heirs at law and next of kin." On June 19, 1945, the executors (appellees) moved to dismiss the appellants' "petition" (motion) for the reasons that (1) the executors "have fully administered" the estate, "and had done so before the filing of this suit" and (2) "the alleged cause of action as set forth in said petition did not accrue within the period of one year from August 31, 1943, which was the date of probate * * * and hence the action is barred by the provisions of Article 93, Section 357" of the Code. On July 19, 1945, the appellants' "petition" was "denied in toto." From this denial of their motion the appellants have appealed.

Whether the appellants' motion be regarded (a) (as the appellees regard it) as a caveat to the will, or (b) (as appellants regard it) as asserting rights under the dismissed caveat of Edith Miriam McLaughlin, in either aspect the motion was properly denied.

The appellants invoke the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (50 U. S. C. A. Appendix, Secs. 501-590; Act October 17, 1940, c. 888, 54 Stat. 1178; amended Act October 6, 1942, c. 581, 56 Stat. 769,

Secs. 1-700) and contend that the court should have required "that the proponents of the will file as a part of the record the military affidavit required by law." In Maryland probate of a will in common form is not a judgment, action or proceeding against any of the next of kin. No notice to anyone is necessary if one or more of the next relations attends and no objection or caveat is made. Code, 1939, Art. 93, Secs. 358, 359; *Lederer v. Johannsen,* 124 Md. 453, 458, 459, 92 A. 1035; *Perrin v. Praeger,* 154 Md. 541, 548, 140 A. 850. The appellants were not parties to the probate proceedings. No "military affidavit" concerning the appellant George was required. 50 U. S. C. A. Appendix, Sec. 521, Act, Sec. 201; *In re Baltimore & Ohio R. R. Co.,* 63 F. Supp. 542, 569.

Section 205 of the Act (50 U. S. C. A. Appendix, Sec. 525) provides: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law * * * for the bringing of any action or proceeding in any court * * * by or against any person in military service * * *." Assuming that this section is applicable to probate proceedings (Soldiers' and Sailors' Civil Relief Act of 1940, Harold J. Reed, 28 Iowa Law Review 14, 29-32), it would be applicable to the one-year period of limitations upon a caveat after probate. Art. 93, Sec. 357. The record does not show how long the appellant was in military service after the date of probate, August 31, 1943. At the argument it was said that his service continued only a few weeks thereafter. Unless it continued after March 4, 1944, the period of limitations (excluding the period of military service) expired before March 5, 1945. There is no evidence or allegation that his service continued after March 4, 1944. The Maryland statute makes no exception in favor of infants or other persons under disabilities. *Garrison v. Hill,* 81 Md. 551, 554, 32 A. 191.

The appellants do not regard their motion as a caveat, but as a claim of right to revival and prosecution of the caveat filed August 29, 1944, and dismissed February 6,

1945. This claim is groundless. The appellants were not formally or otherwise parties to the caveat. They do not allege any agreement or understanding with the caveatrix that she was acting or would act on their behalf. In Maryland each of the next of kin may file a separate caveat on the same grounds (*Pegg v. Warford,* 4 Md. 385, 391-392) or on different grounds. *Worthington v. Ridgely,* 52 Md. 349, 355, 356. The Orphans' Court may make such caveats one case for the trial of issues. This does not deprive any caveator of the right to prosecution of his own caveat—or give him any right to prosecution of any caveat except his own. A promise by a beneficiary under a will to pay one or more of the next of kin an agreed sum for forbearance from caveating the will is a lawful and enforceable compromise agreement. *Hartle v. Stahl,* 27 Md. 157. For present purposes it is unnecessary to consider whether the converse would be true, *i. e.,* whether an agreement not to defend a will, but to permit it to be set aside, would be lawful or enforceable. *Munnikhuysen v. Magraw,* 57 Md. 172, 185-187, 189-192; *Suratt v. Knight,* 162 Md. 14, 16, 158 A. 1.

The disposition of the case at bar involves no review of any of the questions concerning alteration, cancellation or revocation, which the appellants wish to raise. The case comes to us on a meagre record and a more meagre appendix to meagre briefs. It would therefore be impossible, as well as improper, for us to pass upon these questions. However, something should be said as to the scope of our decision.

"No will in writing * * *, nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent; * * *." Art. 93, Sec. 337. With respect to revocation, as with respect to execution, the Orphans' Court has jurisdiction to decide questions relating to the *factum* of the will, but no jurisdiction (as such) to

construe the will. Whether any apparent cancellations were in fact made by the testator and (if so) were made with intent to revoke, whether the cancellations were procured by undue influence, and whether the other parts of the will are so interwoven with the cancelled parts that they cannot stand alone and the entire instrument must therefore fail as a will, are questions within the jurisdiction of the Orphans' Court. *Home for Aged v. Bantz,* 106 Md. 147, 152, 66 A. 701; *Id.,* 107 Md. 543, 550, 69 A. 376; *Dammann v. Dammann,* 78 Md. (unreported), 28 A. 408, 410; *Safe Deposit & Trust Co. v. Thom,* 117 Md. 154, 83 A. 45.

The practice of admitting to probate in common form a will, with cancellations and interlineations included as a part of it, but without any testimony concerning the cancellations and interlineations or any mention of them in the probate proceedings, is apparently not unprecedented but is not to be commended. *Cf. Stuart v. Foutz,* 185 Md. 401, 45 A. 2d 98, 99. Unless the probate in the case at bar can be revoked (which we do not suggest) for fraud (which is not charged) or mistake or for uncertainty, it apparently establishes the *factum* of the will, "with all the additions, alterations and erasures appearing therein." *Ramsey v. Welby,* 63 Md. 584, 586; *Home for Aged v. Bantz,* 106 Md. 147, 148, 66 A. 701.

The legal effect of these cancellations and interlineations, however, is no part of the *factum* of the will, is not determined by the probate of the will, but is a question of construction of the will, which is not, as such, within the jurisdiction of the Orphans' Court. *Ramsey v. Welby, supra; Home for Aged v. Bantz, supra.* Whether the effect of the cancellation of "$100" and the interlineation of "$200" in Article Second was to increase, revoke or leave unchanged the $100 legacy, and whether the effect of the cancellation and interlineations in Article Eighth was to revoke or leave unchanged the provision for children of deceased children or to increase the shares of the surviving children from one-ninth each to one-fourth or to create an intestacy as to five-ninths

or the whole residue, or to leave the effect of Article Eighth unchanged, are among the questions of construction not determined by the probate of the will. *Eschbach v. Collins,* 61 Md. 478, 48 Am. Rep. 123. On these and similar questions, and on any possible questions as to the effect of the administration account or anything else done or left undone by any of the parties, or as to remedies (if any) now available in the Orphans' Court or in equity, we intimate no opinion.

*Order affirmed, with costs.*